**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**-------------------------------------------------------X**
**CARMEN BRYAN,**

*Plaintiff,*

-against-

**VICTOR JAMES SANTIAGO JR.,** professionally known as "N.O.R.E.,"

**DOE CORPORATION 1-10**

*Defendants*.
-------------------------------------------------------X

Civil Action No.:

**COMPLAINT**
JURY TRIAL DEMANDED

Plaintiff Carmen Bryan ("Plaintiff" or "Ms. Bryan"), by and through her attorneys, complaining of Defendant Victor James Santiago Jr., professionally known as "N.O.R.E." ("Defendant" or "Santiago"), alleges as follows:

## PRELIMINARY STATEMENT

1. This is a civil action for gender-motivated violence arising from Defendant Victor James Santiago Jr.'s sexual assault of Carmen Bryan inside and outside a crowded Manhattan nightclub in or about May 1999.

2. Plaintiff brings this action under the New York City Victims of Gender-Motivated Violence Protection Act, N.Y.C. Admin. Code § 10-1102 et seq., including the 2026 ("2026 GMVA") enacted by the New York City Council to create an express civil cause of action for gender-motivated violence occurring before January 9, 2022.

3. The 2026 amendment applies directly to this case. Santiago's sexual assault of Ms. Bryan occurred in Manhattan in or about May 1999, before January 9, 2022, and constituted gender-motivated violence within the meaning of the GMVA.

4. Plaintiff does not rely solely on a procedural reopening of an expired

limitations period. Plaintiff invokes the City Council's 2026 enactment as an independent municipal cause of action for *pre*-2022 gender-motivated violence, adopted to define local civil liability for conduct New York City determined warrants a remedy under its civil rights and public-safety authority.

5. The 2026 amendment was enacted against a developing litigation backdrop concerning the earlier 2022 GMVA lookback provision. Defendants in other cases have argued that state-law revival statutes preempt municipal remedies for historical sexual violence claims. The City Council responded by enacting a *separate* 2026 cause of action directed at gender-motivated violence occurring *before* January 9, 2022.

6. Plaintiff pleads this claim under that independent 2026 cause of action. The claim is not displaced by New York State's Adult Survivors Act ("ASA") or Child Victims Act ("CVA") because those statutes did not occupy the field of municipal civil rights remedies for gender-motivated violence, did not prohibit New York City from defining local civil liability for such violence, and did not eliminate the City's authority to protect residents, workers, visitors, and participants in New York City public life from gender-based violence within the City.

7. Santiago's anticipated argument that the 2026 amendment is merely a disguised claim-revival statute fails at the pleading stage. The City Council expressly created a new municipal cause of action for pre-2022 gender-motivated violence. Plaintiff's claim arises under that newly enacted local civil rights remedy, not merely under a procedural extension of time.

8. Santiago's conduct was not a misunderstanding, flirtation, nightclub chaos, or "boys being boys." It was a public sexual violation of a woman's body, committed without consent, stopped only by third-party intervention, and followed by lasting psychological harm.

9. Ms. Bryan now brings this action to hold Santiago accountable for the gender-motivated violence he committed against her, the public humiliation he inflicted, and the lasting emotional and psychological harm caused by his sexual assault.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

11. Plaintiff Carmen Bryan is, upon information and belief, a citizen of the State of California.

12. Defendant Victor James Santiago Jr. is, upon information and belief, a citizen of the State of Florida.

13. The amount in controversy exceeds $75,000 because Ms. Bryan seeks compensatory damages, emotional distress damages, punitive damages, attorneys' fees where available, costs, interest, and all other relief available by law arising from sexual assault, gender-motivated violence, and related conduct.

14. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred in this District.

15. Specifically, Santiago sexually assaulted Ms. Bryan at a nightclub in Manhattan, New York.

16. Plaintiff Carmen Bryan is an author, public figure, mother, and woman who worked in and around the music industry. She worked behind the scenes in the music industry,

including as a finance officer at Rush Management, a company under Def Jam Recordings, and later at Capitol Records.

17. Defendant Victor James Santiago Jr. is a recording artist, media personality, and public figure professionally known as "N.O.R.E."

18. At all relevant times, Santiago was an employee of Doe Corporation 1-10 advancing their joint financial interests in the promotion of his sophomore album.

19. Santiago moved in public-facing music-industry and nightlife spaces in New York City, including spaces where celebrity, reputation, intoxication, entourage culture, and male entitlement could operate to silence women subjected to sexual misconduct.

20. In 1999, the New York City hip-hop music industry was defined by a highly localized, unregulated, and aggressively male-dominated promotional infrastructure. Album promotion during this era required industry professionals to rely heavily on on-the-ground "street teams," the distribution of physical mixtapes, late-night recording sessions, and informal networking at local nightclubs and industry events.

21. Within this ecosystem, record labels like Doe Corporation 1-10, actively commercialized and normalized a culture of misogyny and the hyper-sexualization of women. The professional environment operated as an exclusionary space that systematically marginalized women, subjecting them to pervasive sexism, sexual objectification, and "misogynoir". Women working within this industry were routinely forced to navigate male-controlled spaces where executive gatekeeping and the deliberate blurring of professional and social boundaries left them acutely vulnerable to harassment, exploitation, and abuse.

## FACTUAL ALLEGATIONS

### Ms. Bryan’s Public Identity in Hip-Hop Made the Assault Especially Humiliating and Harmful

22. During the relevant period of 1999, Victor Santiago Jr., professionally known as N.O.R.E., was a prominent recording artist who actively fostered a volatile and unregulated professional environment. To capitalize on the commercial appeal of the “hardcore” hip-hop image, Mr. Santiago deliberately blurred the lines between his musical career and street-level aggression, including the employment of known street gang members in official touring capacities. Furthermore, his professional operations frequently functioned as unregulated "wild parties" characterized by drug use and the active pursuit of women, creating a dangerous and intimidating workplace for industry professionals.

23. Within this perilous and hyper-masculine ecosystem, Carmen Bryan suffered a severe violation of her autonomy. In the aftermath of this abuse, Ms. Bryan was forced to navigate a profound and debilitating internal conflict exacerbated by the industry's systemic misogynoir. She struggled agonizingly between the urgent need to address the violation of her bodily autonomy and the intense, culturally ingrained pressure to avoid bringing legal or public harm to a successful Black male. In an environment that routinely demanded absolute loyalty to the artist over the safety of women, advocating for her own basic human rights felt akin to a direct betrayal of the culture itself. Ultimately, the profound trauma, exploitation, and stripping of her agency became entirely untenable, leaving her no choice but to break her silence.

24. Ms. Bryan occupied a visible and sensitive place in hip-hop culture. Her personal life had been publicly consumed, commented upon, and sensationalized by others, often through the lens of powerful men and their narratives.

25. Before becoming a public figure, Ms. Bryan worked in the music industry behind the scenes, including at Rush Management under Def Jam Recordings and later at Capitol Records.

26. Ms. Bryan met rapper Nasir Jones, professionally known as Nas, when they were teenagers. They dated during his early adulthood and before the release of his landmark debut album, *Illmatic*. They share a daughter, Destiny Jones, who was born in 1994.

27. During the 1990s, Jones and Santiago were close friends and frequent collaborators. Santiago was a common presence in the same music-industry circles and at certain private gatherings and family events.

28. This context matters. Santiago did not assault a stranger in a vacuum. He assaulted a woman with a name, history, reputation, family, and body, in a public venue, before witnesses, in a social world where humiliation could follow a woman long after the night ended.

**Santiago's Sophomore Album Promotion Placed Him in New York Nightlife Spaces Where the Assault Occurred**

29. At the time of the assault, Santiago was in the pre-release promotional period for his sophomore solo album.

30. During this period in 1999, Santiago was heavily promoting the forthcoming release of that sophomore album.

31. In 1999, social media did not exist as a promotional tool for recording artists, entertainers, or public figures.

32. As a result, hip-hop artists commonly promoted new albums through in-person visibility, including appearances at nightclubs, industry events, radio-related events, parties, and

other nightlife spaces where artists, promoters, DJs, journalists, label personnel, and fans gathered.

33. For artists in Santiago's position, public presence in New York nightlife was not incidental. It was part of the promotional ecosystem for a forthcoming album.

34. Santiago's presence in the Manhattan nightclub where he assaulted Ms. Bryan occurred during this promotional period and within that pre-social-media culture of in-person album promotion.

35. This context matters because Santiago was not merely a private individual passing through an anonymous space. He was a public-facing recording artist moving through nightlife venues at a time when celebrity presence, intoxication, entourage culture, and male entitlement could operate together to amplify a woman's vulnerability and silence her objections.

36. Santiago's promotional status, public identity, and industry visibility gave him social force in that environment. It also made Ms. Bryan's public sexual humiliation more severe because the assault occurred in a crowded nightlife setting connected to the same music-industry world in which both parties were known.

37. In or about May 1999, during the pre-release promotional period for Santiago's sophomore solo album, Ms. Bryan was inside a crowded nightclub in Manhattan, New York.

38. Santiago was present in the nightclub while actively promoting his forthcoming album in the pre-social-media nightlife and music-industry ecosystem that existed in 1999.

39. Santiago saw Ms. Bryan inside the club. He approached her while visibly intoxicated. He did so without invitation, permission, or consent.

40. Ms. Bryan had not invited Santiago to touch her.

41. Ms. Bryan had not consented to any sexual contact.

42. What began as an unwanted approach immediately became a sexual assault. In the thick of a crowded nightclub, with music pounding, bodies moving, and patrons close enough to see, Santiago forced himself onto Ms. Bryan.

43. Santiago forcibly grabbed intimate areas of Ms. Bryan's body in full public view.

44. Using significant physical force, Santiago seized Ms. Bryce, bypassed her undergarments, and committed an act of non-consensual digital penetration.

45. He did so in the presence of Ms. Bryan's friends and other nightclub patrons.

46. Ms. Bryan objected.

47. Ms. Bryan made clear verbal objections and repeatedly pleaded for Santiago to stop.

48. Santiago ignored her objections and pleas.

49. Santiago physically overpowered Ms. Bryan.

50. Ms. Bryan attempted to stop the assault but was unable to do so through her own efforts.

51. Santiago did not stop because he recognized her humanity, heard her objections, or honored her refusal.

52. Santiago stopped only after third parties intervened.

53. Those third parties shouted at Santiago to stop and physically pulled him away from Ms. Bryan.

54. The intervention was necessary to terminate Santiago's conduct and prevent further harm.

55. Santiago's conduct constituted nonconsensual sexual contact, offensive touching, assault, battery, sexual assault, and gender-motivated violence.

56. Santiago's conduct was willful, malicious, wanton, reckless, and undertaken in conscious disregard of Ms. Bryan's bodily autonomy, dignity, safety, and emotional well-being.

57. Santiago's conduct was gender-motivated because it was directed at Ms. Bryan as a woman, involved the sexualized seizure of intimate areas of her body, reflected domination and entitlement over a woman's body, and deprived her of equal freedom to exist in a public space without sexual violation.

58. The assault was not incidental contact in a crowded club. It was intentional, sexualized, nonconsensual physical domination.

59. The gendered nature of the assault is further shown by the target of Santiago's conduct: Ms. Bryan's intimate body parts, her bodily autonomy, her sexual dignity, and her public presence as a woman in a male-dominated entertainment space.

**Immediate Trauma and Outcry**

60. As a direct and foreseeable result of Santiago's assault, Ms. Bryan suffered immediate and severe emotional shock.

61. Ms. Bryan was visibly traumatized.

62. Ms. Bryan cried uncontrollably.

63. Ms. Bryan struggled to comprehend what had just been done to her.

64. Ms. Bryan and her friends left the club to escape further harassment.

65. Santiago, undeterred, followed Ms. Bryan and her friends outside with two acquaintances.

66. Santiago continued making crude comments and, in substance, demanded recognition, asking, "Don't you know who I am?"

67. Once outside, under the clarity of the streetlights, Ms. Bryan made clear that Santiago was the one who did not know who she was.

68. Santiago then appeared to recognize her and immediately apologized, stating in substance, “Carm, I didn’t know it was you. You’re always doing something different with your hair.”

69. Santiago repeated that same explanation as he became calmer.

70. Ms. Bryan and her friends left together.

71. After entering the vehicle, Ms. Bryan learned that one of her friends had given Santiago her phone number. At the time, Ms. Bryan understood her friend’s conduct as an effort to de-escalate and avoid further confrontation or harm.

72. Ms. Bryan did not report the incident to law enforcement at the time.

73. Like many survivors of sexual violence, particularly women harmed in public-facing entertainment spaces where power, celebrity, reputation, and retaliation loom large, Ms. Bryan carried the trauma privately.

74. But she did tell someone. The following day, Ms. Bryan disclosed the assault to a trusted confidant, Shawn Carter, professionally known as Jay-Z.

75. Protective of Ms. Bryan, Mr. Carter reacted strongly and threatened to confront Santiago personally.

76. Wanting the matter to go away and fearing escalation, Ms. Bryan asked Mr. Carter not to act on her behalf.

77. Ms. Bryan’s delayed law-enforcement reporting does not negate the assault, diminish its seriousness, or excuse Santiago’s conduct.

## Santiago Later Apologizes Again

78. A few weeks later, at a private barbecue at the home Ms. Bryan shared with Mr. Jones, the couple hosted a dual celebration for their daughter's birthday and Father's Day weekend.

79. Santiago, who had apparently been invited by Jones, approached Ms. Bryan while they were alone in the kitchen.

80. Santiago again apologized.

81. Santiago again stated that he had not known it was her.

82. Ms. Bryan turned away. She wanted to forget that it happened.

83. Santiago's repeated explanation that he had not known it was Ms. Bryan did not make the assault consensual, accidental, or lawful. It reinforced that Santiago understood he had crossed a line and sought to excuse his conduct only after recognizing who she was.

## The Assault Remained Buried Until Other Public Allegations Triggered Ms. Bryan's Trauma

84. For years, the assault remained with Ms. Bryan.

85. The humiliation did not disappear because time passed.

86. The fear did not vanish because the music industry moved on.

87. The memory remained lodged in her body.

88. The public nature of the assault magnified the injury. It was not only the physical violation. It was being grabbed, overpowered, and sexually humiliated in front of friends and strangers, in the orbit of an industry where women were often expected to absorb male misconduct in silence.

89. In or about November 2023, Ms. Bryan learned of Casandra "Cassie" Ventura's civil filing against Sean Combs.

90. Learning of that filing triggered Ms. Bryan's own traumatic memories of Santiago's assault.

91. After learning of Ventura's filing, Ms. Bryan could not eat.

92. Ms. Bryan could not sleep.

93. Within weeks, Ms. Bryan began attending weekly therapy.

94. In therapy, it became apparent that Ms. Bryan was experiencing flashbacks of Santiago's assault.

95. Ms. Bryan could not simply "let it go," because what Santiago had done to her remained alive in her nervous system, memory, and daily functioning.

96. Santiago's assault caused Ms. Bryan severe emotional distress, humiliation, anxiety, trauma symptoms, sleep disturbance, appetite disturbance, flashbacks, therapy-related damages, and other harms.

**<u>Santiago Is Placed on Notice and Fails to Meaningfully Resolve the Matter</u>**

97. On or about March 6, 2026, Ms. Bryan, through counsel, sent Santiago formal pre-suit notice arising from his unlawful conduct toward her in or about May 1999 at a Manhattan nightclub.

98. The demand placed Santiago on notice of Ms. Bryan's claims and gave him an opportunity to resolve the matter before litigation.

99. Ms. Bryan advised Santiago that his actions constituted forcible touching, assault, disorderly conduct, sexual misconduct, and a violation of her civil rights.

100. Ms. Bryan further advised Santiago that she intended to commence a civil action in New York pursuant to the New York City Gender-Motivated Violence Protection Act and New York City's 2026 amendment to that law.

101. Ms. Bryan required Santiago to contact counsel by March 23, 2026, to engage in good-faith settlement discussions.

102. Ms. Bryan later advised Santiago that unless he or his counsel responded by May 1, 2026, confirming representation and a willingness to engage in meaningful discussions, she would proceed with filing a civil action under the New York City Gender-Motivated Violence Protection Act without further notice.

103. After new counsel became involved, Santiago denied knowing Ms. Bryan.

104. Santiago failed to meaningfully resolve Ms. Bryan's claims.

105. This action followed.

## THE 2026 GMVA AMENDMENT APPLIES TO PLAINTIFF'S CLAIM

106. New York City enacted the GMVA to provide a civil remedy to persons injured by crimes of violence motivated by gender.

107. The GMVA authorizes a civil action against a person who commits, directs, enables, participates in, or conspires in the commission of gender-motivated violence.

108. The GMVA provides civil remedies including compensatory damages, punitive damages, injunctive and declaratory relief, attorneys' fees, and costs.

109. The GMVA does not require a criminal conviction or the commencement of criminal proceedings.

110. In 2026, the New York City Council enacted an amendment to the GMVA creating an express civil cause of action for gender-motivated violence occurring before January 9, 2022.

111. The 2026 amendment was enacted after litigation concerning the earlier 2022 GMVA lookback provision and was structured as a separate cause of action for pre-2022 conduct.

112. The 2026 amendment reflects New York City's determination that gender-motivated violence occurring before January 9, 2022, including historical sexual violence within New York City, should give rise to municipal civil liability.

113. Santiago's assault of Ms. Bryan occurred before January 9, 2022.Santiago's assault occurred in Manhattan, New York.

114. Santiago's assault constituted gender-motivated violence.

115. Plaintiff's claim therefore falls within the class of claims covered by the 2026 GMVA amendment.

116. Plaintiff pleads the 2026 GMVA amendment as an independent source of municipal civil liability.

117. Plaintiff does not plead the 2026 amendment merely as a procedural extension of the limitations period for a previously expired claim.

118. Plaintiff anticipates that Santiago may argue that the 2026 amendment is preempted by state-law revival statutes, including the Adult Survivors Act and Child Victims Act.

119. That anticipated defense fails because the GMVA, including the 2026 amendment, addresses gender-motivated violence as a municipal civil rights wrong and provides a local civil remedy distinct from state-law sexual offense revival statutes.

120. The Adult Survivors Act and Child Victims Act did not expressly preempt local civil rights remedies for gender-motivated violence.

121. The Adult Survivors Act and Child Victims Act did not expressly prohibit New York City from creating a municipal cause of action for gender-motivated violence occurring within the City.

122. The Adult Survivors Act and Child Victims Act did not occupy the entire field of civil remedies for gender-based violence, sexualized violence, or gender-motivated civil rights violations.

123. The 2026 GMVA amendment does not conflict with the purpose of state law. It supplements available remedies by addressing gender-motivated violence as a distinct local civil rights harm.

124. Plaintiff further anticipates that Santiago may argue that the 2026 amendment is an impermissible claim-revival statute disguised as a new cause of action.

125. That anticipated defense also fails because the New York City Council enacted a separate municipal cause of action directed at pre-2022 gender-motivated violence.

126. The 2026 amendment defines substantive municipal liability for pre-2022 gender-motivated violence and authorizes civil relief for that municipal wrong.

127. At minimum, any preemption or claim-revival challenge raises disputed legal questions not suitable for dismissal where Plaintiff has pleaded facts bringing her claim squarely within the text, purpose, and remedial scope of the 2026 GMVA amendment.

## FIRST CAUSE OF ACTION

### Violation of the New York City Victims of Gender-Motivated Violence Protection Act, Including the 2026 Amendment

### Against Defendant Victor James Santiago Jr.

128. Plaintiff repeats, reiterates, and re-alleges each and every allegation above as though fully set forth herein.

129. Santiago committed gender-motivated violence against Ms. Bryan within the meaning of the New York City Victims of Gender-Motivated Violence Protection Act, N.Y.C. Admin. Code § 10-1102 et seq., including the 2026 amendment applicable to gender-motivated violence occurring before January 9, 2022.

130. Santiago's conduct constituted a crime of violence and a crime of violence motivated by gender.

131. Santiago's conduct occurred in Manhattan, New York, in or about May 1999.

132. Santiago's conduct occurred before January 9, 2022, and therefore falls within the temporal scope of the 2026 GMVA amendment.

133. Santiago's conduct was intentional, physical, sexualized, and violent.

134. Santiago approached Ms. Bryan without invitation, permission, or consent.

135. Santiago forcibly grabbed intimate areas of Ms. Bryan's body.

136. Santiago ignored Ms. Bryan's verbal objections and pleas to stop.

137. Santiago physically overpowered Ms. Bryan.

138. Santiago stopped only after third parties intervened, shouted at him to stop, and physically pulled him away.

139. Santiago's conduct was motivated, at least in part, by Ms. Bryan's gender and by animus based on gender.

140. Santiago's gender-based motivation is shown by the sexualized nature of the assault, his targeting of Ms. Bryan's intimate body parts, his domination of her body without

consent, and his treatment of her as a woman whose bodily autonomy could be overridden in a public entertainment space.

141. Santiago's gender-based motivation is further shown by the setting and manner of the assault: a public nightclub, in front of witnesses, where Santiago used physical force, celebrity entitlement, intoxicated bravado, and sexualized aggression to humiliate and overpower Ms. Bryan.

142. Santiago's conduct occurred during his sophomore album promotional period, when he was moving through New York nightlife spaces to promote his forthcoming album in the pre-social-media music industry.

143. Santiago's promotional status and public-facing role amplified the gendered power imbalance in the nightclub environment, increased the humiliating public nature of the assault, and contributed to the coercive conditions under which Ms. Bryan's objections were ignored.

144. Santiago's conduct deprived Ms. Bryan of bodily autonomy, dignity, safety, and equal access to public life free from gender-based sexual violation.

145. Santiago's conduct was not gender-neutral misconduct. It was a sexualized assault of a woman's intimate body parts, committed because she was a woman and because Santiago acted with entitlement to dominate and violate a woman's body.

146. As a direct and proximate result of Santiago's gender-motivated violence, Ms. Bryan suffered physical, emotional, psychological, reputational, and economic harms.

147. Ms. Bryan's harms include emotional distress, mental anguish, humiliation, anxiety, trauma symptoms, flashbacks, sleep disturbance, appetite disturbance, therapy expenses, reputational harm, and loss of enjoyment of life.

148. Santiago's conduct entitles Ms. Bryan to compensatory damages, punitive damages, attorneys' fees, costs, interest, declaratory relief, and all other relief available under the GMVA and applicable law.

## SECOND CAUSE OF ACTION
**Civil Rights Violation / Gender-Based Violence**
**Against Defendant Victor James Santiago Jr.**

149. Plaintiff repeats, reiterates, and re-alleges each and every allegation above as though fully set forth herein.

150. Santiago's sexual assault of Ms. Bryan constituted a gender-based violation of Ms. Bryan's civil rights.

151. Santiago targeted Ms. Bryan's intimate body parts and subjected her to sexualized physical domination because she is a woman.

152. Santiago's conduct was not merely offensive touching. It was a sexualized assertion of power over Ms. Bryan's body in public, undertaken without consent and stopped only by the intervention of others.

153. Santiago's conduct occurred in a public-facing music-industry nightlife environment during his sophomore album promotional period, when his celebrity status, promotional presence, and industry visibility gave him social force within the venue.

154. Santiago used that social force, physical aggression, and sexualized entitlement to overpower, humiliate, and violate Ms. Bryan in public.

155. Santiago's conduct deprived Ms. Bryan of the equal right to be present in a public space without being sexually grabbed, overpowered, humiliated, and violated because of her gender.

156. Santiago's conduct caused Ms. Bryan emotional distress, humiliation, mental anguish, trauma symptoms, therapy-related damages, and other losses.

157. Plaintiff is entitled to all damages and relief available by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Carmen Bryan respectfully requests that this Court enter judgment in her favor and against Defendant Victor James Santiago Jr., professionally known as "N.O.R.E.," and award the following relief:

A. Compensatory damages in an amount to be determined at trial;

B. Damages for emotional distress, mental anguish, humiliation, trauma, flashbacks, sleep disturbance, appetite disturbance, therapy expenses, reputational harm, and loss of enjoyment of life;

C. Punitive and exemplary damages to the fullest extent permitted by law;

D. Attorneys' fees and costs where available by statute, including under the New York City Victims of Gender-Motivated Violence Protection Act;

E. Prejudgment and post-judgment interest;

F. A declaratory judgment that Defendant's conduct violated Plaintiff's rights; and

G. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: September 9, 2026
New York, New York

Respectfully submitted,

**MESIDOR PLLC**
30 Station Road, Suite 5
Bellport, New York 11713
mm@marjoriemesidor.com

By: ______________________
Marjorie Mesidor, Esq.

**THE PALMORE LAW GROUP, P.C.**
68 S Service Road, Suite 100
Melville, New York 11747
heather@palmorelawgroup.com

By: ___*/s/ Heather M. Palmore*___
Heather M. Palmore, Esq.

*Counsel for Plaintiff Carmen Bryan*